UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ROBERT VANVELS, individually
and on behalf of the Participants of the
Michigan Fluid Power, Inc. Money
Purchase Pension Plan, and CHRIS
HOFFBECK,

        Plaintiffs,

v.

ROGER L. BETTEN, SR., Trustee
and Fiduciary of the Michigan Fluid
Power, Inc. Money Purchase Pension
Plan; and, GARY RAJAH, Co-Fiduciary
of the Michigan Fluid Power, Inc. Money
Purchase Pension Plan,

        Defendants.
_____/

Case No. 1:06-CV-710

Hon. Richard Alan Enslen

**OPINION**

This Court has received briefing from the parties on Defendant Gary Rajah's Motion to Compel Arbitration and to Stay Proceedings Pending Arbitration. The Court has also received supplemental briefing which has addressed the Court's questions concerning legal disputes addressed in the Motion. In light of such briefing, oral argument is unnecessary. For the reasons which follow, the Motion shall be granted.

**BACKGROUND**

This suit is brought by Plaintiffs Robert VanVels and Chris Hoffbeck, individually and on behalf of plan participants, to recover plan assets allegedly lost by Defendant Roger L. Betten, Sr. (Plan Trustee, hereafter "Betten") when he employed a financial services firm (Commonwealth Equity Services, Inc., hereafter "Commonwealth") to perform brokerage services on behalf of the

Michigan Fluid Power, Inc. Money Purchase Pension Plan ("the Plan").[1]  Betten's son-in-law, Defendant Gary Rajah (hereafter "Rajah"), was employed by Commonwealth and acted for Commonwealth in performing its brokerage services for the Plan. (Rajah Third Decl. ¶¶ 1-7.) According to Rajah, Commonwealth's charges to the Plan for those services were reasonable and not in excess of standard market rates for brokerage services. (*Id.*)

Plaintiffs have sued Betten and Rajah for supposed violations of their fiduciary duties owed to the Plan and its participants.  Plaintiffs claim that Defendant Rajah made imprudent investment decisions by failing to diversify investments as to Plan assets and that those decisions caused large financial losses to pension assets in 2002. (First Am. Compl. ¶¶ 46, 73.)  Plaintiffs claim that Betten, in addition to Rajah, is responsible for such losses due to his hiring of Rajah and/or his failure to supervise Rajah's account activities. (*Id.* at ¶¶ 44-47.)  Plaintiffs claim in Count 1 that the conduct of Rajah and Betten was in violation of 29 U.S.C. § 1104(a)(1)(B). (*Id.* at ¶¶ 41-47.) Plaintiffs allege in Count II that the conduct of Rajah and Betten was in violation of 29 U.S.C. § 1104(a)(1)(C). (*Id.* at ¶¶ 48-52.)  Plaintiffs state in Count III that the conduct of Defendant Betten was in violation of 29 U.S.C. § 1105(a)(1)-(3). (*Id.* at ¶¶ 53-58).

Plaintiffs have also alleged in Count IV that Defendant Betten violated 29 U.S.C. § 1141 by threatening plan participants to prevent their oversight of plan assets. (*Id.* at ¶¶ 59-63.)  Count V involves claims against both Defendants Betten and Rajah for engaging in prohibited transactions within the meaning of 29 U.S.C. § 1106. (*Id.* at ¶¶ 64-69.)  Finally, Plaintiffs allege in Count VI that

---

[1]Defendant Rajah has in the context of the present Motion noted his objection to the standing of Defendant Hornbeck in this suit, *see* Mot. to Compel 1 n.1, and has also filed a Motion to Dismiss any Individual Claims (Dkt. No. 26).  The latter has not been fully briefed and is not ready for decision.

Defendant Betten, as Plan Trustee, should be liable pursuant to 29 U.S.C. §§ 1024(b)(3) and 1132 for his failure to provide a 2002 Summary Annual Report to plan participants within 210 days of the close of the 2002 fiscal year.[2]  (*Id.* at ¶¶ 70-75.)

It is not disputed that the Plan, through Defendant Betten, entered into an account agreement with Commonwealth through Defendant Rajah.  The account agreement was subject to an arbitration clause/agreement which provided in pertinent part:

> I agree that all controversies that may arise between us concerning any order or transaction or the continuation, performance, or breach of this or any other agreement between us, whether entered into before, on or after the date this account is opened, shall, if required by law, be determined by arbitration before a panel of independent arbitrators set up by the National Association of Securities Dealers, Inc. . . .

(Mot. to Compel, Ex. A-2 at 1.)  The agreement in question governed disputes involving account activities from May 19, 1998 to December 22, 2005, which is the period governing the losses alleged in the First Amended Complaint.  (*Id.*)  A similar arbitration agreement was also approved by the Plan and Commonwealth for times on or after December 22, 2005.  (Mot. to Compel, Ex. A-3 at 2-3.)

In light of such provisions, Defendant Gary Rajah has moved the Court to compel arbitration of the claims against him.

**LEGAL STANDARDS**

This Motion to Compel is subject to the terms of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*  The pertinent legal standards and procedures for resolving motions to compel

---

[2] Plaintiffs' theory on this claim is far from clear.  Plaintiffs request compensation for plan losses.  (*Id.* at ¶¶ 74-75 & ad damnum clause.)  However, according to the allegations (*Id.* at ¶ 73), the losses to the Plan were caused in 2002.  Thus, while a timely report would have given notice of those losses, it would not have prevented them.

arbitration were explained in *Stout v. J.D. Byrider*, 228 F.3d 709, 714-15 (6th Cir. 2000) as follows:

> Under the Federal Arbitration Act, 9 U.S.C. § 2, ("FAA"), a written agreement to arbitrate disputes which arises out of a contract involving transactions in interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." The FAA was designed to override judicial reluctance to enforce arbitration agreements, to relieve court congestion, and to provide parties with a speedier and less costly alternative to litigation. *See Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 270, 280, . . . (1995); *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 52-54, . . . (1995).
>
> When asked by a party to compel arbitration under a contract, a federal court must determine whether the parties agreed to arbitrate the dispute at issue. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, . . . (1985). Claims relating to fraud in the making of the arbitration agreement are determined by the court. *See C.B.S. Employees Federal Credit Union v. Donaldson, Lufkin and Jenrette Securities Corp.*, 912 F.2d 1563, 1566 (6th Cir. 1990). Courts are to examine the language of the contract in light of the strong federal policy in favor of arbitration. *See Soler Chrysler-Plymouth*, 473 U.S. at 626, . . .; *Arnold v. Arnold*, 920 F.2d 1269, 1281 (6th Cir. 1990). Likewise, any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration. *See Soler Chrysler-Plymouth*, 473 U.S. at 626, . . . .
>
> When considering a motion to stay proceedings and compel arbitration under the Act, a court has four tasks: first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration. *See Compuserve, Inc. v. Vigny Int'l Finance, Ltd.*, 760 F. Supp. 1273, 1278 (S.D. Ohio 1990).

*Id.*

### LEGAL ANALYSIS

Following the four-step process set forth above, the first question is whether the parties agreed to arbitrate.

### 1. Agreement to Arbitrate

### A. Parties Subject to Agreement

There is no dispute that the Plan entered into a binding agreement between itself and Commonwealth to resolve disputes between them by arbitration. This agreement clearly covered disputes arising from Commonwealth's individual broker's account activities, including those of Rajah. However, the more interesting question for the moment is whether the individual participants of the Plan should be bound by the arbitration agreement when they sue an individual broker not only for individual losses, but also to recover monies on behalf of a pension plan. To put this question into perspective, one must understand the United States Supreme Court's case law involving breach of fiduciary claims like this one.

Claims for breach of fiduciary duty and loss of pension assets are authorized under 29 U.S.C. §§ 1109 and 1132(a)(2), which are sections 409 and 502(a)(2) of ERISA. Such claims may be brought "by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this Title." 29 U.S.C. § 1132(a)(2).

Appropriate relief for breach of fiduciary duty claims was described by the Supreme Court in *Massachusetts Mut. Life Ins. v. Russell*, 473 U.S. 134, 140-43 (1985). In *Russell*, a participant sued for plan losses and claimed that she was entitled to an individual recovery from the plan fiduciary. The Supreme Court held that she was not. It said:

> There can be no disagreement with the Court of Appeals' conclusion that § 502(a)(2) authorizes a beneficiary to bring an action against a fiduciary who has violated § 409. Petitioner contends, however, that recovery for a violation of § 409 inures to the benefit of the plan as a whole. We find this contention supported by the text of § 409, by the statutory provisions defining the duties of a fiduciary, and by the provisions defining the rights of a beneficiary.

5

\*\*\*

> . . . A fair contextual reading of the statute makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary.

\*\*\*

> . . . .And the entire text of § 409 persuades us that Congress did not intend that section to authorize any relief except for the plan itself. . . ..

*Russell*, 473 U.S. at 143-45.

Following *Russell*, the Sixth Circuit decided other similar cases, which have recognized its reasoning that an individual participant or beneficiary suing for breach of fiduciary duty under ERISA is limited to recovery of benefits for the plan. *See Farrell v. Auto. Club of Mich.,* 870 F.2d 1129, 1133 (6th Cir. 1989); *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 723 (6th Cir. 2005). As such, the Court interprets the various claims made by Plaintiffs against Defendant Rajah as section 409 claims as to which recovery is limited to the Plan's recoupment of lost benefits.

This analysis is made to explain the nature of the pending claims. Those claims, since they are functionally made for the benefit of the Plan, should be subject to the same limitations that a plan should face in recovering directly from a fiduciary. Namely, if the plan has agreed to arbitrate its disputes with a fiduciary, then in order to give effect to the FAA and the national policy favoring arbitration, a participant or beneficiary suing on behalf of the plan must do so subject to the arbitration agreement. *See Wilson Elec. Contractors, Inc. v. Minnotte Contracting Corp.,* 878 F.2d 167, 169 (6th Cir.1989) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983)).

It is argued by Plaintiffs that they were not parties to the arbitration agreement and should not be bound by it. The same argument was made to the Sixth Circuit in *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 625 (6th Cir. 2003). In that case, notwithstanding that the receiver did not sign the arbitration agreement, the Sixth Circuit said:

> The general rule is that a receiver acquires no greater rights in property than the debtor had and that, except as to liens in existence at the time of the appointment, the receiver holds the property for the benefit of general creditors under the direction of the court. *In re K-T Sandwich Shoppe of Akron,* 34 F.2d 962, 963 (6th Cir. 1929). Because they stand in the shoes of the entity in receivership, receivers have been found to lack standing to bring suit unless the receivership entity could have brought the same action. *See, e.g., Goodman v. FCC,* 182 F.3d 987, 991-92 (D.C. Cir. 1999) . . .; *Scholes v. Lehmann,* 56 F.3d 750, 753-55 (7th Cir. 1995) . . . .
>
> Applying this general rule, the court in *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 885 F.2d 1149, 1153-54 (3d Cir. 1989), concluded that arbitration agreements, like other prepetition contractual commitments, were binding on the bankruptcy trustee to the same extent that they would bind the debtor. As a result, the court held that
>
>> in actions brought by the trustee as successor to the debtor's interest under section 541, the "trustee stands in the shoes of the debtor and can only assert those causes of action possessed by the debtor. [Conversely,] [t]he trustee is, of course, subject to the same defenses as could have been asserted by the defendant had the action been instituted by the debtor." *Collier on Bankruptcy,* ¶ 323.02[4].
>
> *Id.* at 1154 . . . .

*Javitch*, 315 F.3d at 625. The *Javitch* Court concluded:

> We are convinced, based on our assessment of both the claims being asserted by Javitch and the authority granted to him by the order appointing him as receiver, that the district court properly found that Javitch has asserted claims belonging to the receivership entities. This court explained, albeit in another context, that although the stated objective of a receivership may be to preserve the estate for the benefit of creditors, that does not equate to a grant of authority to pursue claims belonging to the creditors. *See Jarrett v. Kassel,* 972 F.2d 1415, 1426 (6th Cir. 1992) (customers could not rely on actions taken by corporate receiver, despite the receiver's authority to protect their interests in the receivership property). Thus, we find that Javitch, who is bringing claims on behalf of VES and CFL, is bound to the arbitration

      agreements to the same extent that the receivership entities would have been absent the appointment of the receiver.

*Id.* at 627.

In light of *Russell* and *Javitch*, when considered together, the Court determines that the assertion of rights by a participant on behalf of an ERISA pension plan are subject to the rights and limitations of the plan itself, including any contractually incurred obligations to arbitrate. The Court considers below whether the contract to arbitrate was "void from inception" because of a "prohibited transaction" within the meaning of 29 U.S.C. § 1106.

      **B. Validity of Agreement**

Typically, arbitration agreements are *prima facie* deemed valid. Thus, arguments about the validity of those agreements will typically not avoid arbitration, though they may be a subject of consideration for the arbitrators. *See Burden v. Check into Cash of Ky., LLC*, 267 F.3d 483, 488 (6th Cir. 2001). In this regard, the Sixth Circuit, like other circuits, follows the void/voidable distinction in enforcing arbitration contracts, and further requires that fraudulent inducement arguments specifically relate to the validity of the arbitration clause. *Id.* That is, contracts to arbitrate which are voidable due to fraud or other circumstance are subject to arbitration; only illegal arbitration contracts or arbitration contracts which were void from inception are not subject to arbitration. *Id*. citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 400 (1967) (holding that fraud in the inducement of the entire contract, as opposed to fraud regarding the arbitration clause, was arbitrable in the absence of evidence that the parties to the arbitration clause intended that the inducement issue be withheld from arbitrators). "[A]s a matter of federal law, any doubts concerning

the scope of arbitrable issues should be resolved in favor of arbitration." *Wilson Elec. Contractors, Inc.,* 878 F.2d at 169 (quoting *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 24-25).

Because the First Amended Complaint alleges that the transactions between the Plan and Rajah are "prohibited transactions" under 29 U.S.C. § 1106, the question arises whether, if such is true, the "prohibited transactions" relate sufficiently to the arbitration agreement so as to render it void. The Court holds that the record does not support an inference that Defendants engaged in "prohibited transactions" within the meaning of ERISA or that any suspected transactions invalidated the arbitration clause. To explain this result, one must fathom the murky depths of the ERISA statutory language involving "prohibited transactions."

The following statutory definitions are pertinent to this discussion. A "party in interest" is defined by ERISA to include both a "fiduciary" and a "relative" of a fiduciary. 29 U.S.C. § 1002(14)(A), (F). A "relative" is in turn defined as "a spouse, ancestor, lineal descendant, or spouse of a lineal descendant." 29 U.S.C. § 1002(15). Thus, a "relative" expressly includes the son-in-law of a plan fiduciary.

Title 29 U.S.C. § 1106(a), which is section 406 of ERISA, states in pertinent part:

Except as provided in section 1108 of this title:

(1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such a transaction constitutes a direct or indirect–

. . .

    (C) Furnishing of goods, services or facilities between the plan and a party in interest;
    (D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan; . . . .

29 U.S.C. § 1106(a)(1). Section 406(b) also prohibits a fiduciary from engaging in transactions for his personal self-interest. 29 U.S.C. § 406(b).

Title 29 U.S.C. § 1108(b), section 408 of ERISA, enumerates several exemptions from the section 1106 prohibition. These exemptions include:

> Contracting or making reasonable arrangements with a party in interest for office space, or legal, accounting, or other services necessary for the establishment or operation of the plan if not more than reasonable compensation is paid therefor.

29 U.S.C. § 1108(b)(2); *see also* 29 U.S.C. § 1108(c)(2) (otherwise exempting "reasonable" fiduciary compensation). This exemption in section 408(b)(2), however, is subject to an exception under section 408(d), which, when it is applicable restores the prohibited status to the transaction. This exception applies to certain transactions between an "owner-employee" of certain designated plans and a "member of the family" of the "owner-employee" of such plans. 29 U.S.C. § 1108(d)(1). The term "owner-employee" is defined to include Defendant Betten in this instance. However, the term "member of the family" explicitly borrows its definition from a tax code provision--26 U.S.C. § 267(c)(4). The tax code provision defines a "member of the family" differently than a "party in interest"/"relative" is defined under ERISA. That is, the "member of the family" definition does not include spouses of a descendant. *See* 26 U.S.C. § 267(c)(4); *Stern v. Comm'r of Internal Revenue*, 215 F.2d 701, 705 (3d Cir. 1954). As such, the section 1108(d) exception does apply to Defendant Rajah.

What does this mean in terms of the enforcement of the arbitration agreement? It means that the enforcement of the 406(a) and 406(b) "prohibited transaction" provisions depend upon an analysis of whether the transactions fall within the section 408(b)(2) exemption for a contract for

reasonable services which is reasonably compensated. The only evidence of record shows that Defendant Rajah was offered and paid market rates for investment services. As such, there is nothing on this record sufficient for a determination that the arbitration agreement was void from inception and unenforceable. Furthermore, the regulation which interprets section 408(b)(2) is directed toward disqualifying two kinds of transactions–"sweetheart deals" in which a service provider is paid an excessive rate, or transactions in which service providers receive additional compensation/kickbacks from third parties. *See* 29 C.F.R. § 2550.408b-2(d) (defining meaning of "reasonable compensation"). The record does not support any conclusion that the compensation for this service agreement was not "reasonable" within the meaning of section 408(b)(2), nor was there any other basis to challenge the contracts as "void" at the inception of the transactions or the time that the arbitration agreement was made. As such, the Court determines, consistent with the policy of the FAA, that the arbitration agreement is valid and should be enforced to the extent required by its terms.

### 2. Terms of the Agreement

Plaintiffs argue that the terms of the agreement do not cover the adjudication of the breach of fiduciary duty claims against Defendant Rajah. Notwithstanding such argument, the Court finds that the terms of the agreement do cover the arbitration of the claims. The agreement utilizes deliberately broad language covering

> all controversies that may arise between us concerning any order or transaction or the continuation, performance, or breach of this or any other agreement between us, whether entered into before, on or after the date this account is opened . . .

(Mot. to Compel, Ex. A-2 at 1.) It was the intent of such language to capture all conduct related to the transactions by Rajah as to the pension funds, especially including the investments he made regarding pension funds. Although the contract language does not specifically mention fiduciary breaches, it should be read to include them inasmuch as those claims relate to "transactions" and/or "orders" by Rajah as to the assets of the pension "account." *See also Soler Chrysler-Plymouth, Inc.*, 473 U.S. at 622 n.9; *Acevedo Maldonado v. PPG Indus., Inc.*, 514 F.2d 614, 616 (1st Cir. 1975); *Brener v. Becker Paribas, Inc.*, 628 F. Supp. 442, 451 (S.D.N.Y. 1985).

As such, and consistent with the broad rule of interpretation favoring federal arbitration, the Court finds that the contract language requires the arbitration of all of Plaintiffs' claims against Defendant Rajah.

### 3. Preemption

This Court earlier asked the parties to brief whether the Employee Retirement Income Security Act, as amended, 29 U.S.C. §§ 1001 *et seq*., preempts the Federal Arbitration Act. Plaintiffs have not argued in favor of preemption so the Court regards this issue waived. (*See* Pls.' Suppl. Br. 3.) Had such an argument been made, however, the Court observes that the great majority of authorities do not favor preemption as noted in *Simon v. Pfizer, Inc.,* 398 F.3d 765, 777 (6th Cir. 2005.) Therefore, the Court determines that preemption, having been waived, does not prevent the arbitration of disputes subject to the instant arbitration agreement.

### 4. Stay of Non-Transferred Claims

Since the Motion only covers claims against Defendant Rajah, it means that only they will be transferred and claims against Defendant Betten will remain pending. This circumstance presents

the issue pertinent under 9 U.S.C. § 3--whether the adjudication of the claims against Defendant Betten should be stayed pending the arbitration.  Defendant Rajah requests a stay in his Motion. (Mot. to Compel 2; Br. in Support 10.)  Defendant Betten has supported Defendant Rajah's position as to this Motion.  (*See* Def. Betten's Brf. Regarding Prohibited Transaction Issue.)  No limitation has been expressed by Betten as to Rajah's request for stay.  Plaintiffs have, however, opposed the Motion to Compel, and presumably also a stay of these proceedings. (Pls.' Reply 10.)

Once a court has determined that some, but not all, legal claims are subject to arbitration, then the usual rule is to stay an action pending such arbitration.  *See Burden*, 267 F.3d at 488.  This result is consistent with the language of section 3 of the FAA, which suggests this result.  *See* 9 U.S.C. § 3; *Burden*, 267 F.3d at 488.  Furthermore, to the extent that the FAA permits consideration of the related equitable circumstances, those circumstances typically favor the issuance of a stay. Arbitration is intended as a cost-effective method of dispute resolution.  Its cost-effectiveness is diminished if parties must toil in two vineyards during the arbitration.  Furthermore, the continuation of the federal suit during arbitration not only increases costs, but it creates possibilities of different or inconsistent adjudications, which are contrary to the purposes of the FAA.  Therefore, the Court determines that the remainder of this suit should be stayed pending arbitration.

## **CONCLUSION**

In accordance with this Opinion, an Order shall enter compelling arbitration of claims against Defendant Gary Rajah and otherwise staying the resolution of this suit pending the resolution of the arbitration proceedings.

Dated in Kalamazoo, MI:                                                  /s/Richard Alan Enslen             
January 31, 2007                                                              Richard Alan Enslen
                                                                                        Senior United States District Judge